# EXHIBIT 1

```
KEITH HOLLAND    - PLAINTIFF                          SUPERIOR COURT
48 MOUNTAIN VIEW ROAD                                 CUMBERLAND, ss.
WATERBORO ME 04087                                    Docket No  PORSC-CV-2025-00217

vs
PIEDMONT AIRLINES INC - DEFENDANT                     DOCKET RECORD
5443 AIRPORT TERMINAL ROAD
SALISBURY MD 21804


Filing Document: COMPLAINT               Minor Case Type: OTHER NON-PERSONAL INJURY TORT
Filing Date: 07/03/2025
```

## Docket Events:

07/03/2025 FILING DOCUMENT - COMPLAINT FILED ON 07/03/2025

07/09/2025 ASSIGNMENT - SINGLE JUDGE/JUSTICE ASSIGNED TO JUSTICE ON 07/09/2025
           DEBORAH   CASHMAN , JUSTICE

### Receipts

```
07/03/2025      Misc Fee Payments       $5.00           paid.
07/03/2025      Misc Fee Payments       $150.00         paid.
07/03/2025      Misc Fee Payments       $25.00          paid.
```

A TRUE COPY
ATTEST: _____
                    Clerk

IN THE CUMBERLAND COUNTY SUPERIOR COURT

KEITH HOLLAND

Plaintiff,

CASE NUMBER: POKSC-CV-25-217

v.

PIEDMONT AIRLINES, INC

Defendant

A True Copy
Attest: _Shelley Sawyer_
                    Clerk of Courts

## Complaint

Keith Holland, the Plaintiff, hereby sues Piedmont Airlines, Inc., the Defendant, for religious discrimination under the Maine Human Rights Act. Additionally, Plaintiff hereby sues the Defendant for fraudulent misrepresentation because Defendant promised religious accommodation during and prior to Plaintiff's job interview, but refused that accommodation after the commencement of employment. Plaintiff also hereby sues the Defendant for fraudulent misrepresentation because Defendant promised two pay raises per year and did not provide them.

## Jurisdiction and Venue

1. Mr. Holland is an adult resident of the state of Maine.
2. Piedmont Airlines has an office at the Portland International Jetport in Portland, Maine.
3. Mr. Holland has been employed by Piedmont Airlines as a part-time ramp agent at the Portland International Jetport in Portland, Maine since February 28, 2023. Ramp agents handle luggage, clean and search aircraft at night, push planes back from the gate, and operate aircraft servicing equipment. The events described in this complaint occurred at the Portland International Jetport.
4. On August 11, 2023, Keith Holland filed a complaint with the Maine Human Rights Commission (MHRC Case No.: E23-0313) alleging that Piedmont Airlines discriminated against him on the basis of religion. Following an investigation, the Maine Human Rights Commission found "that there are reasonable grounds to believe that unlawful discrimination has occurred." Because no settlement was reached, the Maine Human Rights Act authorizes the filing of a civil action in Superior Court by the complainant.

Page 1

## Statement of Facts

1. Piedmont airlines is a regional airline wholly owned by American Airlines with more than 10,000 employees nationwide.
2. Piedmont Airlines does ground handling, operations, and customer service for American Airlines flights at the Portland International Jetport in Portland, Maine.
3. Keith Holland is a Seventh-day Adventist Christian, and as such, has a sincerely held religious conviction that prevents him from working from sunset on Friday to sunset on Saturday.
4. During his job interview on February 7, 2023, when informed about Mr. Holland's religious beliefs, Piedmont Airlines stated that Plaintiff's religious convictions would be accommodated.
5. During his job interview on February 7, 2023, Plaintiff was also told that he would be paid $18.39 per hour and would receive two pay raises per year.
6. Plaintiff started working for Piedmont Airlines at the Portland International Jetport on February 28, 2023.
7. After he started working for Piedmont Airlines, Mr. Holland was assigned a training shift that started at 9:30 PM on Friday, March 31 and ended at 1:30 AM on Saturday, April 1, 2023. This training shift was for the purpose of teaching new ramp agents how to clean aircraft and conduct security searches, and as such, it is mandatory and usually needs to be conducted at night, since that is when there are aircraft on the ground for extended periods of time. However, it can be scheduled on any night of the week. Upon noticing that he was scheduled to work on a Friday night, Mr. Holland reminded the interviewer, Bobby Sue Lowe, who was also teaching the class, that he was not available at that time due to his religious convictions. Ms. Lowe then told him to fill out a religious accommodation form and send it to the regional human resources office in Philadelphia, Pennsylvania, which he did.
8. In an email dated March 23, 2023, Mr. Holland wrote the following to Bobby Sue Lowe, the Administrative Assistant for Piedmont Airlines at the Portland International Jetport, who had conducted his job interview and was also the instructor for the March 31 training:

> "I was looking over the schedule for next week and I see that you have me scheduled for training on Friday night. As I mentioned during my initial job interview, I am not available to work from sunset Friday to sunset Saturday for religious reasons. I can work Saturday nights after sunset, but not Friday nights. I have asked my pastor to write an exemption letter for me, but I am writing you now to give you as much notice as possible. If there is another time you would like for me to come in, please let me know. I will be returning from my grandmother's memorial service on Monday and I should be pretty flexible aside from that."

9. On March 27, 2023, Tyler Wilcox, who was the Piedmont Airlines General Manager for the Portland International Jetport wrote the following in an email:

    "Thank you for speaking with me today. To recap our conversation, Piedmont Airlines cannot accommodate this request due to the restrictions in the CWA contract. Once an agent in any workgroup is awarded schedule bid, local leadership are unable to make any changes to the shift to meet an accommodation-- such as this request."

10. Agents do not bid for training shifts. They are assigned by management and the collective bargaining agreement says nothing about when training can occur.

11. On March 29, 2023, the Regional Human Resources Director, Rick Miller, responded, "Your religious accommodation request creates an undue hardship on the PWM station's operation. This request will violation Article 4 (Filling Vacancies) of the Collective Bargaining Agreement (CBA)."

12. On Friday, March 31, 2023, Mr. Holland called out and did not show up for his assigned training shift.

13. Piedmont Airlines uses a point system for attendance issues. Once an employee reaches a certain number of points they receive discipline. This number is much lower for probationary employees than for non-probationary employees, with nine dependability points resulting in termination of employment during probation, as opposed to 30 dependability points resulting in termination for non-probationary employees. Also, during probation, 5 or more dependability points results in a 90-day probation extension. Plaintiff received three "dependability" points for the unapproved absence for his March 31 training shift.

14. On the night of April 17-18, Plaintiff completed his aircraft appearance and security search training, finishing around one o'clock in the morning, and then returned to work his day shift later that morning. By the end of his day shift, he was feeling sick. The following day, April 19, he was very sick and unable to work, so he called out.

15. On May 2, 2023, Plaintiff was notified that his probation period would be extended an additional 90 days due to his absences on March 31 and April 19, which amounted to a total of six dependability points, three for each absence. During probation, employees are not allowed to trade or swap shifts without management approval. They are also subjected to frequent ridicule and harassment. Additionally, since Plaintiff had six dependability points, he would have been discharged if he had been absent one more time during probation, so he was forced to come to work, even when he was sick.

16. Suspension of trades and swaps is a common punishment imposed by management for offenses such as failing to complete online training classes by the due date or calling out for a traded shift.

17. On August 11, 2023, Plaintiff filed a complaint with the Maine Human Rights Commission (MHRC).

18. On or about August 17, 2023, Tyler Wilcox, who was, at that time, the Piedmont Airlines General Manager for the Portland International Jetport, noticed that Mr. Holland had often

been working 50-70 hours per week and asked him why he did not switch to full time. Mr. Holland responded that it was because he lacked the seniority to bid for a full time schedule that did not conflict with his religious convictions and Piedmont Airlines had made it clear that they would not offer any religious accommodation other than shift trades and swaps. When Mr. Holland asked whether any accommodation might be possible in order to allow him to work full time, Mr. Wilcox replied that he was unwilling to make any such accommodation.

19. On January 6, 2025, at the Maine Human Rights Commission's hearing, Piedmont Airlines' attorney, Daniel Farrington, acknowledged that "the attendance points shouldn't have been assigned," meaning that Piedmont Airlines had no legitimate reason for the extension of Mr. Holland's probation.

20. Based on Mr. Wilcox's March 27, 2023 letter, Mr. Miller's March 29, 2023 response to Mr. Holland's accommodation request, and Mr. Holland's conversation with Mr. Wilcox on or about August 17, 2023, Mr. Holland did not apply for full time employment until May 14, 2025. At that time, he believed he had sufficient seniority to get a full time shift that did not conflict with his religious convictions and accepted the offer, but after speaking with coworkers, it seemed likely that it would not be possible for him to get an acceptable schedule, so he asked to remain part time and continues to work part time at the time of this filing.

21. As of the time of this filing, Plaintiff has not been given a raise during the entire time that he has worked at Piedmont Airlines.

## Causes of Action

Count 1: Fraud or Deceit

1. Piedmont Airlines falsely represented their policies regarding religious accommodation.
2. It involved a material fact because Plaintiff would not have accepted the job offer had he known the truth of the matter.
3. Whereas Ms. Lowe was informed about Mr. Holland's religious convictions prior to his job interview and could have contacted Human Resources personnel if she was unsure of the policy, Ms. Lowe either knew this statement to be false or made the statement recklessly as an assertion of fact without knowledge of its truth or falsity.
4. Because these statements were made at a job interview, Defendant clearly expected them to be relied upon and acted on.
5. Clearly, Plaintiff relied on Defendant's statements in that he not only accepted this job offer, which he would not have done if he even suspected that statement to be false, but

     his email to Ms. Lowe on March 23 also indicated an expectation that the accommodations offered would be provided.

6. Considering that Defendant had a legal obligation to provide religious accommodation and considering that Plaintiff was aware of three Seventh-day Adventists working for United Ground Express at the Portland International Jetport, Plaintiff did not know and had no reason to believe that Defendant's statements were untrue.
7. Plaintiff was damaged by Defendant's actions.

Count 2: Fraud or Deceit

1. During Mr. Holland's job interview, Piedmont Airlines made a false representation that Plaintiff would be entitled to two pay raises per year.
2. It involved a material fact because Plaintiff would have likely rejected the job offer had he known that he would not be given two pay raises per year.
3. As the Administrative Assistant, who is responsible for doing most of the job interviews and payroll-related tasks, Ms. Lowe either knew this statement to be false or made it recklessly without knowledge of its truth or falsity.
4. Whereas this statement was made during a job interview, Defendant clearly intended to induce the Plaintiff to rely on it.
5. Because Mr. Holland had no reason to believe this statement was false and had no way of knowing that it was false, he acted upon it by accepting the job offer in February of 2023.
6. Plaintiff was damaged by Defendant's actions.

Count 3: Religious Discrimination

1. The Maine Human Rights Act provides, in part, that it is unlawful, based on religion, to "fail or refuse to hire or otherwise discriminate . . . [or] discharge an employee or discriminate with respect to hire, tenure, promotion, transfer, compensation, terms, conditions or privileges of employment or any other matter directly or indirectly related to employment. . . ." 5 M.R.S. § 4572(1)(A). By this standard, Defendant has clearly discriminated against Plaintiff based on religion.
2. "In order to establish a prima facie case of religious discrimination, a plaintiff must show that the observance or practice conflicting with an employment requirement is religious in nature, that she called the religious observance or practice to her employer's attention, and that the religious observance or practice was the basis for her discharge or other discriminatory treatment." *E.E.O.C. v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1575 (7th Cir. 1997).
3. Mr. Holland's reason for not working from sunset Friday to sunset Saturday is clearly religious in nature since it comes directly from the Fourth Commandment in the Bible

(Exodus 20:8-11), which states in part, "Remember the Sabbath day, to keep it holy. Six days you shall labor, and do all your work, but the seventh day is a Sabbath to the Lord your God. On it you shall not do any work…"

4. Piedmont Airlines was informed of Mr. Holland's sincerely held religious beliefs and agreed to accommodate them.
5. When Mr. Holland noticed that he was scheduled to work on a Friday night, he immediately reminded Defendant that he was unable to work at that time and filled out a formal request for accommodation, but that accommodation request was denied.
6. Piedmont Airlines incurred no additional cost by training Mr. Holland on April 17 instead of March 31, so Defendant incurred no undue hardship, as they claimed.
7. While Defendant generally allows probationary employees to trade and swap shifts with management approval, Defendant has consistently refused other reasonable requests for accommodation.
8. Plaintiff was damaged by Defendant's actions.
9. Whereas the Maine Human Rights Commission voted unanimously that there are Reasonable Grounds to believe that Piedmont Airlines discriminated against Keith Holland on the basis of religion on January 6, 2025, and whereas conciliation failed, Mr. Holland is now authorized to seek relief from the court.

## Prayer for Relief

Plaintiff prays that this court provide relief as follows:

1. Enter judgment requiring Defendant to pay Plaintiff two 8% pay raises per year, one on February 28 and the other on November 5, for the duration of his employment, and that those raises shall be retroactive for the entire time that Plaintiff has been employed by Piedmont Airlines. If Defendant increases its pay rate in the future, Defendant shall pay Plaintiff the greater of its regular pay rate or the rate he would be entitled to based on biannual 8% pay raises.
2. Enter judgment requiring that Defendant provide Plaintiff with compensation equal to the difference between his actual earnings and what he would have earned as a full-time agent working an average of five hours of overtime per week, retroactive to August 6, 2023. This compensation shall take into account biannual pay raises as mentioned above.
3. Enter judgment that Defendant shall provide Plaintiff with four weeks of additional paid vacation, beyond what he would otherwise be entitled to, that can used at any time within the next three years to compensate for the fact that he was not provided paid vacation time for his first two years of employment because he was denied full time employment because of his religious convictions.

4. Enter judgment that Defendant shall immediately offer Plaintiff full time employment and provide him with a schedule that does not conflict with his religious convictions. Plaintiff shall have the option of switching to full time employment immediately, at the start of the next schedule bid, or at any time in the future when there is a full time opening.

5. Enter judgment that Piedmont Airlines shall not extend Mr. Holland's Friday shifts past sunset.

6. Enter judgment that, whereas Plaintiff unjustly and illegally received three dependability points while on probation, Defendant shall remove all dependability points from his record effective immediately.

7. Enter judgment that Defendant shall pay Plaintiff reasonable attorney fees and all other applicable legal expenses, as well as pre-judgment and post-judgment interest and shall compensate Plaintiff in the amount of $10,000 for his time to file a complaint with the Maine Human Rights Commission in addition to reasonable compensation for his time, effort, and expense to file this lawsuit.

8. In the event that Plaintiff has been discharged due in whole or in part to his religious convictions at the time of this judgement, Plaintiff hereby requests the court enter judgment requiring his reinstatement with full flight benefits, including ZED, and all other privileges and benefits to which he would otherwise be entitled as well as back pay for the duration of the time when he was not employed there.

9. Whereas Defendant has consistently demonstrated apparent contempt for the law, or at the very least, reckless disregard for it, and has made numerous statements to the Maine Human Rights Commission that Defendant knew or should have known to be false, Plaintiff hereby requests punitive damages in the amount of $250,000 or five times the amount of compensatory damages, whichever is greater, or whatever amount the jury may deem appropriate.

10. Any other relief that the court deems just.

11. Plaintiff hereby requests a trial by jury on all of the issues described above.

Respectfully submitted,

*Keith Holland*

Keith Holland
48 Mountain View Rd.
North Waterboro, ME 04061
(757) 646-2619
keithholland@mailfence.com