UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| KEITH HOLLAND, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | 2:25-cv-00478-SDN |
| ) | |
| PIEDMONT AIRLINES, INC. ) | |
| ) | |
| Defendant ) | |

**RECOMMENDED DECISION ON MOTION TO DISMISS**

In a three-count complaint, Plaintiff alleges that Defendant, Plaintiff's employer, engaged in religious discrimination in violation of the Maine Human Rights Act, 5 M.R.S. § 4572(1)(A) and made intentional misrepresentations for which he seeks to recover under Maine common law. Defendant moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the intentional misrepresentation claims (counts I and II of the complaint) based on Plaintiff's alleged failure to assert sufficient facts to support the claims. (Motion to Dismiss, ECF No. 12.)

After review of the complaint and consideration of the parties' arguments and the applicable law, I recommend that the Court grant Defendant's motion to dismiss without prejudice.

## FACTUAL BACKGROUND[1]

Plaintiff, who is a Seventh-day Adventist Christian with a sincerely held religious conviction that prevents him from working from sunset on Friday to sunset on Saturday, applied for a job with Defendant. Defendant is a regional airline that provides ground handling, operations, and customer service for American Airlines flights at the Portland International Jetport (the Jetport) in Portland, Maine.

On February 7, 2023, Bobby Sue Lowe, an Administrative Assistant for Defendant at the Jetport, interviewed Plaintiff for a position with Defendant. Ms. Lowe was responsible for doing most of the job interviews and payroll-related tasks for Defendant. Ms. Lowe was informed about Plaintiff's religious convictions prior to the interview. During the interview, Defendant advised Plaintiff that his religious conviction would be accommodated.[2] Plaintiff was also "told that he would be paid $18.39 per hour and would receive two pay raises per year." (Complaint at 2 ¶ 5, ECF No. 1-1.) Plaintiff relied on the statements when he accepted the position.

Plaintiff started working for Defendant as a part-time ramp agent on February 28, 2023. Plaintiff was subsequently assigned a training shift that was to start at 9:30 p.m. on Friday, March 31, 2023, and end at 1:30 a.m. on Saturday, April 1, 2023. When he realized

---

[1] "When considering a motion to dismiss pursuant to . . . Rule 12(b)(6), the Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in [Plaintiff's] favor." *Enercon v. Global Computer Supplies, Inc.*, 675 F. Supp. 2d 188, 191 (D. Me. 2009). The facts set forth here, therefore, are derived from the allegations in Plaintiff's complaint.

[2] Although Plaintiff alleges that he interviewed with Ms. Lowe, he does not specifically allege that Ms. Lowe represented that his religious conviction would be accommodated. Rather, he alleges that Piedmont Airlines made the representation. (*See* Complaint at 2 ¶ 4.)

that he had been scheduled to work on a Friday night, Plaintiff emailed Ms. Lowe reminding her that he was unavailable to work from sunset on Friday to sunset on Saturday for religious reasons. As Ms. Lowe instructed, Plaintiff submitted a religious accommodation form to the regional human resources office. Defendant's management and human resources personnel advised that Defendant could not accommodate Plaintiff's religious accommodation request. On Friday, March 31, 2023, Plaintiff called out and did not show up for his training shift.

Defendant uses a "dependability" point system to govern employee attendance issues, including any related discipline. For a probationary employee, the disciplinary thresholds are lower than for a non-probationary employee: five or more points during probation would result in an extension of probation, and nine points for a probationary employee would result in termination (while non-probationary employees are terminated at thirty points). Plaintiff received three points for his unexcused absence on March 31, 2023. The following month, he received three more points for an unexcused sick day, resulting in an extension of his probationary period of employment. During the probationary period, Plaintiff was not allowed to trade or swap shifts without management approval. He had to go to work while he was sick to avoid another unexcused absence, which would have resulted in termination, as he already had six points.

In August 2023, Tyler Wilcox, Defendant's manager at the Jetport, noticed that Plaintiff often worked 50-70 hours per week and asked him why he did not switch to full time employment. Plaintiff replied that Defendant would not offer any religious accommodations other than shift trades and swaps and that he lacked the seniority to bid

for a full-time schedule that would not conflict with his religious convictions. Plaintiff asked whether any accommodation might be possible to allow him to work full-time, and Mr. Wilcox replied that he was unwilling to make any such accommodation.

In May 2025, Plaintiff applied for full-time employment with Defendant. At that time, he believed he had sufficient seniority to bid for a full-time schedule that did not conflict with his religious convictions. He initially accepted an offer of full-time employment, but after speaking with co-workers, he asked to remain part-time because he understood it was unlikely that he would secure an acceptable schedule.

Plaintiff continues to work for Defendant on a part-time basis. He has received no raises from Defendant during the term of his employment.

### LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* To attain plausibility, "a complaint need not plead facts sufficient to establish a *prima facie* case . . . or allege every fact necessary to win at trial." *Carrero-Ojeda v. Autoridad de Energia Electrica*, 755 F.3d 711, 718 (1st Cir. 2014) (quotation marks and citations omitted). "That said, the elements of a *prima facie* case remain relevant to [the] plausibility assessment, as those elements are part of the background against which a plausibility determination should be made." *Id.* (quotation marks and modification omitted). There "need not be a one-to-one relationship between

any single allegation and a necessary element of the cause of action," but reference to the elements of the cause of action informs whether the "cumulative effect of the complaint's factual allegations" amounts to a plausible claim for relief. *Id.* (quotation marks omitted).

Here, the elements of Plaintiff's intentional misrepresentation claim, "a variant of a cause of action for fraud," *Drilling & Blasting Rock Specialists, Inc. v. Rheaume*, 147 A.3d 824, 829 (Me. 2016), consist of (1) the making of a false representation (2) of a material fact (3) with knowledge of its falsity or reckless disregard for its truth (4) for the purpose of inducing reliance by another person and (5) justifiable reliance by that person resulting in pecuniary loss. *Deane v. Central Me. Power Co.*, 322 A.3d 1223, 1232 (Me. 2024).

In addition to the plausibility standard applicable to all claims under Rule 12(b)(6), claims of fraud are subject to a heightened pleading standard under Rule 9(b), which requires the circumstances constituting fraud to be stated "with particularity." Fed. R. Civ. P. 9(b). "This special pleading requirement applies to state law claims" that are pursued in federal court, like Plaintiff's intentional misrepresentation claims here. *Goodman v. President & Trs. of Bowdoin College*, 135 F. Supp. 2d 40, 59 (D. Me. 2001). Consequently, while a federal court evaluates whether a plaintiff has stated a plausible fraud claim based on state law, "the assessment of whether a party has adequately pleaded the circumstances of fraud is measured by federal law." *Id.*

"The core purposes of Rule 9(b) are to place the defendants on notice and enable them to prepare meaningful responses, to preclude the use of a groundless fraud claim as pretext for discovering a wrong, and to safeguard defendants from frivolous charges that might damage their reputation." *Dumont v. Reily Foods Co.*, 934 F.3d 35, 39 (1st Cir.

2019) (quotation marks and modification omitted). To accomplish these purposes, courts require a plaintiff to specify "the who, what, where, and when of the allegedly misleading representation," *id.* at 38 (quotation marks and modification omitted), and to identify some basis for inferring scienter. *Efron v. UBS Fin. Servs. Inc. of P.R.*, 96 F.4th 430, 438 (1st Cir. 2024); *see also N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009) ("The courts have uniformly held inadequate a complaint's general averment of the defendant's 'knowledge' of material falsity, unless the complaint *also* sets forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading.") (quotation marks and citation omitted).

### DISCUSSION

Plaintiff alleges that Defendant committed fraud during Plaintiff's job interview by falsely representing Defendant's policy regarding religious accommodation (count I) and falsely representing that Plaintiff would receive two pay raises each year (count II). Defendant contends that Plaintiff has failed to provide sufficient detail regarding the content of the alleged false representations and has not alleged facts from which one could reasonably infer that the person making the statements knew that the statements were false or misleading. Defendant further contends that Plaintiff has not plausibly alleged reliance that resulted in pecuniary harm.

Plaintiff has generally alleged that Defendant stated that his religious convictions would be accommodated, and that Defendant provides two raises each year. Notably, however, Plaintiff has not specifically alleged the substance of the statements (e.g., what

accommodation Defendant would provide),[3] or specifically identified the person who made the statements with facts that would support a finding that the person had the requisite mental state to support an intentional misrepresentation claim. For example, Plaintiff alleges that "Piedmont Airlines stated that [his] religious convictions would be accommodated." (Complaint at 2 ¶ 4.) He also alleges that Ms. Lowe was the interviewer. While the complaint might be construed to allege that Ms. Lowe made the statements, Plaintiff's allegations lack the necessary specificity regarding the substance of the alleged statements and Ms. Lowe's alleged mental state when making the statements. *See U.S. ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 750 (2023) (explaining that the "traditional common-law scienter requirement for claims of fraud" encompasses three mental states: (1) actual knowledge that a statement is false; (2) deliberate ignorance of the truth or falsity of a statement; and (3) reckless disregard of the truth or falsity of a statement); *see also Sec. & Exch. Comm'n v. Liberty*, No. 2:18-cv-00139-JDL, 2021 WL 664834, at *6 (D. Me. Feb. 19, 2021) ("At the pleading stage, courts have found allegations of recklessness sufficient where a defendant . . . failed to review or check information that he had a duty to monitor[.]") (quotation marks, modifications, and citation omitted). In other words, the mere fact that Ms. Lowe regularly conducted interviews and engaged in payroll-related

---

[3] Although Plaintiff includes in his opposition to the motion to dismiss some additional details regarding the alleged misrepresentations, the Court cannot consider those details in adjudicating this motion to dismiss. *See Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) ("Under Rule 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated into the complaint[.]"); *Davis v. Theriault*, No. 1:22-cv-00275-JDL, 2023 WL 5628193, at *32 (D. Me. Aug. 31, 2023) ("Parties cannot cure deficiencies in pleadings by asserting new facts and allegations in response to a motion to dismiss."). I offer no opinion as to whether the additional assertions, if included in an amended complaint, would support an actionable claim.

tasks does not support an inference that she knowingly or recklessly made false representations.

In the absence of averments that could support an inference of scienter and that provide the content of the allegedly false statements—i.e., "what, specifically, was stated"—Plaintiff's complaint "falls short of Rule 9(b)'s particularity requirement." *See Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 357-58 (1st Cir. 2013) (affirming dismissal of fraud claim predicated on allegation that Wells Fargo "intentionally made statements . . . that [it] was the 'holder' of her mortgage with entitlement to the rights to her monthly mortgage payments, and the related right to foreclose"); *cf. Dumont.*, 934 F.3d at 38-39 (concluding that complaint challenging labeling as fraudulent sufficiently identified content of allegedly misleading statement where it alleged that defendant sold a coffee labeled "Hazelnut Crème" that did not, in fact, contain any hazelnut). Because Plaintiff has failed to satisfy the Rule 9(b) pleading requirements as to counts I and II of the complaint, dismissal of counts I and II is warranted. [4]

---

[4] Because Plaintiff has failed to allege sufficient facts regarding the allegedly fraudulent statements, the Court need not address Defendant's contention that Plaintiff has not sufficiently alleged that he suffered pecuniary harm as the result of his reliance on Defendant's alleged representations. To the extent the Court wishes to consider the argument, I find the argument has merit as to count I. Plaintiff has alleged no pecuniary harm resulting from his reliance on Defendant's alleged representation that Plaintiff's religious convictions would be accommodated. For instance, he has not alleged that he lost other employment opportunities because he accepted Defendant's offer of employment. As to count II, if Plaintiff's allegations regarding the pay increases were otherwise actionable, the allegations likely satisfy the pecuniary harm requirement. Plaintiff asserts that he has not received a pay increase during his employment. Under Maine law, because of the nature of an employment relationship, the proper measure of damages in a false representation case may include the value of the Plaintiff's alleged "lost bargain." *See Wildes v. Pens Unlimited Co.*, 389 A.2d 837, 841 (Me. 1978) (affirming award of compensatory damages based on income plaintiff would have earned if he had been employed by defendant consistent with defendant's false representation to plaintiff about his employment).

## CONCLUSION

After consideration of the parties' filings related to Plaintiff's motion to dismiss, for the reasons discussed herein, I recommend that the Court grant Defendant's motion to dismiss without prejudice.

In his opposition to the motion to dismiss, Plaintiff asks the Court to allow him to amend the complaint to address any deficiencies in the complaint. Plaintiff did not present a proposed amended complaint. The circumstances of this case—that the case is in its initial stages, that Plaintiff is self-represented, and that the case will proceed regardless of whether Plaintiff can proceed on a misrepresentation claim—militate in favor of dismissing counts I and II without prejudice and permitting Plaintiff the opportunity to move to amend his complaint within a reasonable time. *See* Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1357 (4th ed.) ("[D]ismissal under Rule 12(b)(6) generally is not with prejudice . . . because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original complaint can be corrected."); *see also Boivin v. Black*, 225 F.3d 36, 43 (1st Cir. 2000) ("[C]ourts endeavor, within reasonable limits, to guard against the loss of pro se claims due to technical defects."). Accordingly, if the Court adopts the recommended decision, I also recommend the Court establish a deadline for the filing of a motion to amend the complaint.

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district

court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.

      Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

      /s/ John C. Nivison
      U.S. Magistrate Judge

Dated this 13th day of March, 2026